**In re the Marriage of Kathryn Ann (Larson) McCLINTOCK, Petitioner, Respondent,**

v.

**Patrick T. LARSON, Appellant.**

**No. C4–85–1266.**

Court of Appeals of Minnesota.

March 11, 1986.

Daniel J. Goldberg, Minneapolis, for petitioner, respondent.

Kevin W. Eide, Eagan, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

The marriage of Kathryn Larson and Patrick Larson was dissolved by a judgment and decree dated March 9, 1981. Custody of the parties' only child was awarded to Kathryn, and Patrick was ordered to pay $150 per month for child support. In July of 1981, the parties agreed to have the child reside with Patrick during the week and Kathryn on weekends, and the judgment and decree was amended to reflect this agreement. The court ordered Kathryn to pay $125 per month in child support. In May 1985, Patrick moved for increased child support. The trial court denied Patrick's motion, and he appeals from that order pursuant to Rule 103.03, subd. (e) of the Rules of Civil Appellate Procedure. We affirm.

## FACTS

Under an amended judgment and decree reflecting the parties' agreement, Kathryn has custody of Brian, the parties' son, on weekends and holidays for a total of 126 days per year and Patrick has custody the remaining portion of the year. Kathryn was ordered to pay $125 per month for child support. Kathryn stated in an affidavit that she has purchased a substantial amount of Brian's clothing, and has furnished a bedroom in her home with toys and a full wardrobe so Brian does not have to bring anything when he visits on weekends.

Kathryn later married Stephen McClintock, a vice president of Citicorp (U.S.A.), Inc., in 1983.

A year later, Kathryn terminated her job as a secretary, a job from which she earned $1,025 per month, so she could attend a nine month course at a business school to improve her secretarial skills. Kathryn continued to pay her child support obligation while she was enrolled at the school, and exhausted a $2,000 property settlement from Patrick in fulfilling her support obligation.

In late February 1985, Mr. McClintock accepted a two to three year position with Citicorp in Athens, Greece as a senior bank officer. Following this assignment, McClintock expects another foreign assignment that will last approximately ten years.

On April 26, 1985, Kathryn moved the trial court for, among other things, permission to have visitation with Brian in Athens every summer for the entire summer and a reservation of child support obligation because she will be unable to work in Athens due to work restrictions. The trial court granted Kathryn visitation with Brian in Athens for sixty days each summer but denied her request to reserve her child support obligation while she is abroad.

On May 28, 1985, Patrick moved the court for a $260.00 increase in child support, contending that Kathryn's move out of the country will result in Brian being with him almost every weekend of the year, thereby substantially increasing his monthly child care and entertainment expenses of $819.50 by $204.00. Patrick also asserted Kathryn has "an obvious ability to increase payments" because of her subsequent marriage.

Kathryn resisted Patrick's motion, and asked the court to suspend her child support obligation during the summer months when she has custody and grant her reasonable attorney's fees.

The trial court denied all motions reasoning that Kathryn will have no income with which to pay increased child support unless Mr. McClintock voluntarily gives her money because Mr. McClintock has no legal obligation to pay child support to Patrick.

Patrick appeals from the order denying his request for increased child support and now seeks $409.75 per month in child support or a remand directing the trial court to determine a proper amount of child support. The trial court made no findings of fact relating to increased income, increased need, or the unfairness of the $125 child support award.

## ISSUE

Did the trial court err in denying Patrick's motion for an increase in child support?

## ANALYSIS

Patrick appeals from the trial court's order denying his motion for a modification of his child support award pursuant to Rule 103.03, subd. (e) of the Minnesota Rules of Civil Appellate Procedure, which provides that "[a]n appeal may be taken to the Court of Appeals * * * from an order which, in effect, determines the action and prevents a judgment from which an appeal might be taken * * *." *See* Minn.R.Civ. App.P. 103.03, subd. (e).

An order denying a post-decree motion to modify child support brought pursuant to Minn.Stat. § 518.64 is appealable under Rule 103.03(e) of the Rules of Civil Appellate Procedure. *King v. Carroll*, 356 N.W.2d 449, 451 (Minn.Ct.App.1984). Thus, this appeal is properly before the court.

Trial courts have broad discretion in determining child support. *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn.Ct.App.1984). If a child support determination has a reasonable and acceptable basis in fact, it must be affirmed. *Id.* A trial court will not be reversed absent a clear abuse of discretion. *See Chapman v. Chapman*, 352 N.W.2d 437, 442 (Minn.Ct.App.1984) (court applied abuse of discretion standard).

■ A child support obligation may be modified upon a showing that a substantial change has made the original obligation unfair and unreasonable. *Blomgren v. Blomgren*, 367 N.W.2d 918, 920 (Minn.Ct. App.1985) (citations omitted). Under Minn. Stat. § 518.64, subd. 2, a child support order

> may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.72 to 256.-

87; or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the [order] unreasonable and unfair. On a motion for modification of support, the court shall take into consideration the needs of the children and the financial circumstances of each party's spouse, if any * * *.

Minn.Stat. § 518.64, subd. 2 (1984).

 Once a party proves the existence of any one of the four statutory grounds for modification, the trial court is required to consider whether the original child support terms are unfair and unreasonable. *Blomgren*, 367 N.W.2d at 920. The trial court must make findings regarding: (1) the present net income of each party and each spouse; (2) the needs of the child; and (3) the unfairness of the original support order resulting from the changes in income of the parties and needs of the child. *Id.* at 921 (citation omitted).

 Patrick contends that two of the statutory factors in Minn.Stat. § 518.64, sub. 2 are satisfied. First, Kathryn has enjoyed a substantial increase in income through her husband's employment. Under the statute, a court considering a request for modification *"shall take into consideration* the needs of the children and *the financial circumstances of each party's spouse,* if any."* Minn.Stat. § 518.-64, subd. 2 (1984) (emphasis added). Patrick cites a section of the child support guidelines as additional support: "The child support payment guidelines take into consideration the following: (1) all earnings, income, and *resources of the obligor* * *."* *See* Minn.Stat. § 518.551, subd. 5(a)(1) (1984) (emphasis added). *Cf. Giencke v. Haglund,* 364 N.W.2d 433, 435 ((Minn.Ct. App.1985) (in considering motion for increased child support, court noted that obligee's husband earned $57,000 per year and that obligee's income had substantially increased).

In response, Kathryn argues there is no caselaw or statutory law providing that the income of an obligor's spouse is an independent basis upon which to justify an increase in child support and that income is defined as any form of periodic payment. Minn.Stat. § 518.54, subd. 6 (1984). Kathryn argues the legislature never intended the statutory support guidelines to include the separate income and resources of the obligor's new spouse because the new spouse has no legal obligation to provide support. Moreover, Kathryn argues that an obligor's spouse's income is analogous to personal loans to an obligor for support, loans which this court determined did not constitute periodic payments of the type that provide a dependable source of child support and do not constitute an obligor's income. *See Stangel v. Stangel,* 366 N.W.2d 747, 749 (Minn.Ct.App.1985).

The second statutory factor present in this case, according to Patrick, is his increased needs. Patrick contends Kathryn's move out of the country will require Patrick to be with Brian for 126 additional days per year, during which Patrick will also be required to spend more on clothing for Brian because Kathryn will not be available to make such purchases as in the past.

Patrick argues that Kathryn's increased income and his increased needs constitute substantial changes in the parties' circumstances making the original child support order unreasonable and unfair because his income has not substantially increased.

Patrick additionally charges that a child support obligor will not be permitted a *reduction* in child support if he or she makes a career change, such as voluntarily terminating employment or liquidating a substantial portion of assets, for example, absent a showing of good faith. *See Giesner v. Giesner,* 319 N.W.2d 718, 719–720 (Minn.1982). Patrick claims this applies here because Kathryn voluntarily discontinued employment and shifted a substantial burden to him.

Kathryn responds there is no substantial change in circumstances, even assuming Patrick's expenses will increase by $204 per month because he has failed to demonstrate that he does not have the financial

ability to pay these expenses. Absent proof of ability to pay the alleged additional expenses, Kathryn contends Patrick's claim that the original support order has been rendered unfair and unreasonable is conclusory and without merit.

Kathryn argues that if a substantial change in circumstances is found, the trial court must apply the statutory support guidelines found in Minn.Stat. § 518.551, subd. 5, *See Hadrava v. Hadrava,* 357 N.W.2d 376, 379 (Minn.Ct.App.1984) (citing Minn.Stat. § 518.17, subd. 5 (Supp.1983)), and under the guidelines her obligation would have to be decreased because she has zero income, and consequently the guidelines would result in a monthly child support level of zero. *See* Minn.Stat. § 518.551, sub. 5 (1984).

Due to the increased number of days Patrick will have custody of the parties' son, there is no question Patrick will incur additional expenses. Such an increase in custodial time could very well make the terms of the judgment and decree unfair. *See* Minn.Stat. § 518.64, subd. 2 (1984).

In making a finding addressing the fairness of the original judgment and decree, the trial court must make a finding on the present net income of each party and each spouse and on the needs of the child.

*Blomgren,* 367 N.W.2d at 921. In this case, the trial court in its memorandum did allude to Kathryn's inability to earn income in Greece because of a work restriction and the necessity to turn to her new husband for support money for her son. The court was silent on Patrick's financial situation.

While the trial court's order and attached memorandum are vague and do not include all the necessary findings, given the paucity of information in the record, information that Patrick was required to introduce in order to sustain his burden as the moving party, we cannot say the trial court erred in denying Patrick's motion for increased child support.

## DECISION

Because Patrick failed to sustain his burden under Minn.Stat. § 518.64, subd. 2, the decision of the trial court is affirmed.

Affirmed.