Carolyn Sommer, Plaintiff-Respondent,

v.

Stanley Sommer, Defendant-Appellant.

Court of Appeals

No. 81–2414. *Submitted on briefs May 28, 1982.—Decided July 15, 1982.*
(Also reported in 323 N.W.2d 144.)

For the defendant-appellant the cause was submitted on the brief of *S.A. Schapiro* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *William W. Moir, III* of *Miller, Hayes, Werner & Moir, S.C.* of Sheboygan.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   The major issue in this appeal is whether a personal injury damage award to the noncustodial spouse can be considered a change of circumstances that justifies an increase in child support. The trial court answered the question "yes," and we affirm.

Carolyn Sommer commenced a divorce action on September 12, 1977. Eleven days later, Stanley Sommer was injured in a job accident. The divorce was granted in December 1980, and Stanley Sommer received his personal injury proceeds in April 1981. There was no mention of the personal injury action or possible proceeds from the action in the findings of fact, conclusions of law or judgment of divorce.

In July 1981, Carolyn Sommer moved to increase support of the children. As one of her grounds, she alleged that her ex-spouse had received a substantial personal injury award resulting in his improved economic standing. Stanley Sommer objected, claiming that the court could

not consider the damage award since it was based, in part, on his diminished earning capacity as a result of the injury. He contended that the damage award was to compensate him for his disabilities and should not be considered as an improvement over his normal economic circumstances but rather as a vehicle to bring him back to where he would have been had he not been injured.

The trial court found that his net monthly income at the time of the divorce was between $932 and $1,050. His present rate of pay now gives him $1,217.90 net pay, or an increase from $6.75 per hour to $7.90. Therefore, his earnings have improved.

The trial court also held that Stanley Sommer's recovery in a personal injury action could be considered in modifying the support payments. We agree with the trial court's actions and accordingly affirm.

Mr. Sommer's first argument on appeal questions the propriety of taking personal injury damages into account in determining economic status in child support modification actions. He asserts that personal injury damages are personal to the victim and ought to be invulnerable to this kind of attack. He argues that damages are designed to make the victim whole and depletion of them for child support purposes relegates the victim to uncompensated status. Whether this court wholeheartedly concurs in Mr. Sommer's characterization of the theory of personal injury damages, we do not share in his conclusion. We determine that the policy behind the Family Code overrides, in this case, the theory of damages.

The intent behind the Family Code, as expressed in sec. 1(2), ch. 105, Laws of 1977, is undeniably pellucid:

[T]hat the standard of living of any minor children of the parties *be maintained at the level the children would have enjoyed had the marriage not ended,* so that inso-

far as is possible, the children will not suffer economic hardship. [Emphasis added.]

Child support payments, then, are designed to maintain children, insofar as possible, at the economic level they would have enjoyed had there been no divorce. That the noncustodial parent has an obligation to share with his minor children the fruits of post-divorce economic improvements, there can be little doubt. "[A] divorce terminates only the relationship of husband and wife, and does not affect in any manner the parental relations or duties of the parties." *Hutschenreuter v. Hutschenreuter*, 23 Wis. 2d 318, 321, 127 N.W.2d 47, 49 (1964). Had Mr. Sommer not been divorced, it is expected that any improvement in his economic status achieved through a personal injury recovery would have accrued, at least in part, to his family. The divorce does not change this obligation.

Mr. Sommer cites *In re Buda*, 323 F.2d 748 (7th Cir 1963), in support of his theory that personal injury damage awards belong to the injured party alone and cannot be made accessible to third parties. There, the court prohibited creditors in a bankruptcy proceeding from gaining access to the proceeds of a damage award, stating: " '[i]t is not . . . the policy of the law' to take from a wrongfully injured person the compensation for his injury to satisfy his creditors in a bankruptcy proceeding." *Id.* at 750 (quoting *Sibley v. Nason*, 81 N.E. 887, 889 (Mass. 1907)). We believe *Buda* to be inapposite to the case at bar. There is a substantial difference in relationship between a debtor and his creditors and a father and his children.[1] The state's policy that parents support their children governs here.

---

[1] We note that child support debts are treated differently in bankruptcy. They are not dischargeable. 11 U.S.C. § 523(a)(5).

Finally, we point out that the statutory provision governing the modification of child support payments, sec. 767.32 (1), Stats., requires the court to "take into consideration each parent's earning capacity and *total economic circumstances* . . . ." (Emphasis added.) No exception is made for monies received from extraordinary sources.[2]

Having so determined that a court examining changed financial circumstances in a child support modification action may look to personal injury compensation, we now address whether the trial court properly did so in this case.

Whether a noncustodial parent's ability to pay child support has changed is a question of fact. Where a modification rests entirely on a factual determination, the test on appeal is whether that determination is contrary to the great weight of the evidence. *Thies v. MacDonald*, 51 Wis. 2d 296, 303, 187 N.W.2d 186, 190 (1971). That damages are intended to make a person whole does not guarantee that the person is in precisely the same economic condition as he or she was before the accident; only some sort of financial accounting can determine that. Here, the evidence showed that not only had Mr. Sommer received a sizeable damage award upon which he receives interest, he also earns more now than he did before the accident. Plainly, then, a finding of increased ability to pay is not against the great weight of the evidence.

We note, in passing, that whether a personal injury recovery does indeed improve a victim's economic condition for child support purposes will not always be easy or obvious. There are times, of course, when the victim

---

[2] Other jurisdictions are in accord with this principle. *See, e.g., In re Marriage of Fuller*, 89 Cal. App. 3rd 405, 152 Cal. Rptr. 467 (1979) (inheritances, trusts and pensions not exempt).

has suffered actual economic impairment as a result of the tort-feasor's negligence, and the award is merely repaying the victim for the actual economic impairment. If so, the award may truly make the victim economically whole again and nothing more; no increase in economic circumstances results. These questions of fact must be carefully considered by the trial court in order to do justice to both the noncustodial parent and to the children.

Stanley Sommer raises two other issues. First, he claims there was neither proof nor a finding that the increase was in the best interests of the children. He cites language from *Kritzik v. Kritzik*, 21 Wis. 2d 442, 448, 124 N.W.2d 581, 585 (1963):

> A material change in the circumstances of the parties, while a necessary condition for modification, is not in itself sufficient. *There must also be a finding that meeting new needs would be in the best interests of the children.* [Emphasis added.]

He concludes that three factors must be considered: first, that there has been a material change in circumstances; second, that there are new needs existing, and, third, that meeting of the new needs is in the best interests of the children.

Mr. Sommer is wrong. In determining modification of maintenance, trial courts look to the needs of the children and the income producing abilities of the parties. *Bussewitz v. Bussewitz*, 75 Wis. 2d 78, 90, 248 N.W.2d 417, 424 (1977). The needs criterion must be viewed in the best interests of the children. Mr. Sommer separates the need factor into two different factors—one dealing with the needs of the children and one dealing with the needs being in the best interests of the children. After setting up the strawman, he proceeds to knock it down by asserting that neither Mrs. Sommer nor the court discussed the third factor.

A court cannot consider the needs of the children without considering whether those needs are in the children's best interests. In discussing children's needs, the *Kritzik* court cautioned trial judges to consider need in light of the children's best interests.

[I]n his role as a family court, the trial court represents the interests of society in promoting the stability and best interests of the family. It is his task to determine what provisions and terms would best guarantee an opportunity for the children involved to grow to mature and responsible citizens, regardless of the desires of the respective parties. This power, vested in the family court, reflects a recognition that children involved in a divorce are always disadvantaged parties and that the law must take affirmative steps to protect their welfare. [Footnote omitted.]

*Kritzik*, 21 Wis. 2d at 448, 124 N.W.2d at 585. We conclude that it would be redundant for a trial court to discuss the needs of the children and then in a wholly separate finding indicate that the needs are in the best interests of the children. The latter is inherent in the former.

In this case, the trial court showed substantial attention to the interests of the children involved. It discussed the fact that the oldest daughter was working parttime as a waitress to try to save enough money for a college education; that there was an increase in the age of the three minor children; that there was an increase in the standard of living, and that there was a showing that Mr. Sommer could financially absorb the increase.

Mr. Sommer was paying only $225 per month for all three children. An increase of $75 would be of but minimal strain to Mr. Sommer because he showed an increase in earnings of between $25,000 and $30,000 in invest-

ments left over from his $130,000 personal injury judgment, with interest of at least six percent, or $3,360 per year. It is evident that Mr. Sommer could afford to contribute at least $300. We note that in *Poehnelt v. Poehnelt*, 94 Wis. 2d 640, 289 N.W.2d 296 (1980), the supreme court affirmed an increase in child support with the same factors as we have here. The court in *Poehnelt* stated:

[T]here was an increase in the age of the children, a sharp increase in the cost of living, or a change in the custodial parent's financial position and/or a showing that the non-custodial parent could financially absorb the increase.

*Id.* at 651, 289 N.W.2d at 301. We are convinced that the court took the best interests of the children into account when discussing the needs of the children.

The other issue is that the needs of the children were not proven. Our review and discussion of the previous issue plus our review of the record satisfies us that this criterion was met.

*By the Court.*—Order affirmed.